UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DANNY WILLIAM CATES                                                                 PLAINTIFF

V.                                     No. 4:22-CV-586-LPR-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                      DEFENDANT

### RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.     Introduction

On January 9, 2020, Danny William Cates applied for disability benefits, alleging disability beginning December 25, 2019. (Tr. at 9). His claims were denied both initially and upon reconsideration. *Id*. After conducting a telephone hearing on April 20, 2021, an Administrative Law Judge ("ALJ") denied Cates's application in

an opinion dated May 28, 2021. (Tr. at 23). Following the ALJ's order, Cates sought review from the Appeals Council, which denied his request for review. (Tr. at 1). Cates seeks judicial review of the ALJ's decision, which now stands as the Commissioner's final decision.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II.    The Commissioner's Decision[1]

The ALJ found that Cates had not engaged in substantial gainful activity since the alleged onset date of December 25, 2019. (Tr. at 11). At Step Two of the analysis, the ALJ found that Cates has the following severe impairments: seizure disorder, history of cerebrovascular accident (CVA), and history of left carpal tunnel syndrome. *Id*.

After finding that Cates's impairments do not meet or equal a listed impairment, the ALJ determined that he has the residual functional capacity ("RFC") to perform work at the medium exertional level, with exceptions. (Tr. at 13). He is limited to only frequent fingering and handling in the nondominant upper extremity.

---

[1] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

He also requires seizure precautions to include no driving, work from heights, work with firearms, or work involving ladders, ropes, or scaffolds.

Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that Cates's RFC prevents him from performing his past relevant work as a skidder operator and heavy equipment operator, but allows him to perform jobs that exist in significant numbers in the national economy, including jobs as a kitchen helper and auto detailer. (Tr. at 21–22). The ALJ therefore concluded that Cates is not disabled. (Tr. at 23).

## III.  Discussion

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

3

The United States Supreme Court has held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B.   Cates's Arguments on Appeal

Cates argues that the ALJ's decision is not supported by substantial evidence. He argues that the ALJ erred by discounting the credibility of his subjective complaints and formulating an RFC that fails to account for all of his limitations. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

"When evaluating a claimant's credibility as to subjective complaints, the ALJ must consider the *Polaski* factors." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Those factors

include the claimant's work history; his activities of daily living ("ADLs"); the duration, frequency, and intensity of his alleged symptoms; the effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010). "Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Id*. at 931–32 (citing *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008)). Nevertheless, "an ALJ is entitled to make a factual determination that a [c]laimant's subjective . . . complaints are not credible in light of objective medical evidence to the contrary." *Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010).

"The ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson*, 600 F.3d at 932 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Id*. (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

Cates, a high school graduate, was 60 years old at the time of the ALJ hearing. (Tr. at 36). He boasts a particularly impressive work history—44 years of steady work dating back to 1976, when he was in high school. (Tr. at 52, 189). From 2006

to 2019, Cates worked as a logger and heavy equipment operator for Gentry Brothers Logging. (Tr. at 36–37).

On July 30, 2019, Cates suffered an ischemic stroke secondary to right carotid artery stenosis. (Tr. at 38–39, 346). He received TPA therapy and recovered well, despite some residual left hemiparesis (weakness on one side of the body). (Tr. at 15). He was back at work within a few weeks, and he continued to work until December 25, 2019, his alleged disability onset date. (Tr. at 9, 39, 299). That day, Cates presented to the hospital with confusion and loss of consciousness. (Tr. at 15, 346-54). His EEG results were consistent with complex partial seizures. He was diagnosed with probable post-stroke epilepsy and started on Keppra. His cardiac workup also showed non-sustained ventricular tachycardia, for which he was prescribed metoprolol. Surgery was recommended to treat his carotid artery stenosis.

Cates underwent bilateral carotid endarterectomies in February and May of 2020, and he tolerated the procedures well. (Tr. at 568, 934–36). In March 2020, Cates's neurologist, Dr. Keith Schluterman, noted that Cates was doing well on Keppra. (Tr. at 648–52). Cates reported some lingering numbness in his left hand and on his left mouth/lips, but his mobility was much improved. Dr. Schluterman reviewed seizure restrictions with Cates, which included no driving or operating heavy machinery for one year following the seizure. In July 2020, Cates reported

some symptoms that were worrisome for ministrokes, but results from an updated brain MRI were unremarkable. (Tr. at 16, 639–46).

Cates had another seizure in November 2020. (Tr. at 822–67). He reported no side effects from Keppra, and his dosage was increased. The only treatment records dated after the second seizure come from a January 2021 surgical follow-up visit. (Tr. at 870–73). At that visit, Cates appeared to be doing well with no focal neurologic deficits. His physical exam results were normal.

At the hearing in April 2021, Cates told the ALJ that he cannot work because his medications make him "really tired all the time," and he feels as though he has lost all ambition. (Tr. at 48–49). The record contains a letter from Cates's son describing the "dramatic change" he had seen in his father's functioning, particularly his lack of energy, since the December 2019 seizure. (Tr. at 299). He described his father as "a man who has worked long days from sun up to sun down my entire life and somebody who is not content to stay at home and be still." But he observed that, following Cates's stroke and seizures, "[s]mall household tasks were wearing him out when they shouldn't," and Cates now had "a hard time mustering up the energy" to go fishing, as he had done every weekend for years.

The ALJ determined that these allegations of fatigue were inconsistent with the objective medical evidence and other evidence of record. The ALJ noted that Cates did not report any side effects from his medication in his application for

benefits and did not mention any complaints of fatigue to his primary care doctor. (Tr. at 20). Although the ALJ acknowledged that Cates gave "some vague reports of fatigue to his neurologist, noting that [Cates] was seeing a cardiologist about lowering his metoprolol dosage due to bradycardia and its associated fatigue," he noted that the neurologist did not document any abnormalities in his Review of Systems. (Tr. at 20, 874–76). Similarly, Cates's cardiology records consistently indicate that he denied having fatigue. (Tr. at 571–618).

On appeal, Cates argues that the ALJ erred by failing to consider his work history in his credibility evaluation. The Court certainly agrees with Cates that his consistent work history weighs in his favor. *See Nunn v. Heckler*, 732 F.2d 645, 648 (8th Cir. 1984) ("[A] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."). But the ALJ is not required to discuss every *Polaski* factor, and the ALJ's failure to discuss work history in his credibility analysis, standing alone, is not enough to warrant reversal. *See Roberson v. Astrue*, 481 F.3d 1020, 1025–26 (8th Cir. 2007) ("It might have been better if the ALJ had referred specifically to [the claimant's] work record when determining her credibility . . . but we do not think that the ALJ was required to refer to every part of the record, and we think that the portions of the record that he referred to were sufficient to support his credibility determination.").

Cates suggests that the ALJ discounted his complaints solely because the objective medical evidence failed to support them (which the ALJ cannot do), but that is not entirely accurate. The ALJ specifically found that Cates's complaints of medication side effects were inconsistent with both (1) statements Cates made to his treating physicians and (2) the function reports Cates completed in conjunction with his application for benefits. This evidence indeed contradicts Cates's testimony and provides substantial support for the ALJ's decision to discount the credibility of his subjective complaints. *See Van Vickle v. Astrue*, 539 F.3d 825, 829–30 (8th Cir. 2008) (finding that claimant's failure to mention side effects to treating physicians supported ALJ's conclusion that claimant's side effects were not significant).

Because the ALJ did not credit Cates's allegations of fatigue, the ALJ was not required to include any related limitations in the RFC. *See Nash v. Comm'r*, 907 F.3d 1086, 1090 (8th Cir. 2018) ("An ALJ must include 'only those impairments and limitations he found to be supported by the evidence as a whole in his hypothetical to the vocational expert.'") (quoting *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011) (ALJ not required to adopt claimant's "unsupported subjective complaints and self-imposed limitations")). As for Cates's complaints of left side weakness, tingling, and numbness, the ALJ included manipulative limitations to account for Cates's severe impairment of carpal tunnel syndrome. Cates has failed

9

to demonstrate that greater RFC limitations were necessary. *See Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (claimant bears burden of proving RFC limitations).

The Court acknowledges that substantial evidence could support a contrary decision in this case, and the Court might very well have reached a different conclusion had it been the initial finder of fact. But that does not mean the ALJ's findings are unsupported by substantial evidence or that the decision should be reversed. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001). The ALJ's findings are supported by substantial evidence and not based on legal error. The decision must therefore be affirmed.

## IV.   Conclusion

The ALJ applied proper legal standards in evaluating Cates's claims, and substantial evidence supports the decision to deny benefits. The Court should affirm the decision and enter judgment in favor of the Defendant.

DATED this 8th day of June, 2023.

_____
UNITED STATES MAGISTRATE JUDGE